# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1392-14T1
A-5553-14T1
A-3474-15T1

KATHLEEN LANE,

Plaintiff-Respondent,

v.

ANDREW F. LANE, JR.,

Defendant-Appellant.

_____

Argued October 16, 2017 — Decided December 4, 2017

Before Judges Messano and Accurso.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Bergen
County, Docket No. FM-02-2135-04.

Steven M. Resnick argued the cause for
appellant in Docket Nos. A-5553-14 and
A-3474-15 (Ziegler & Zemsky, LLC, attorneys;
Mr. Resnick, on the briefs).

Brian P. McCann argued the cause for
respondent in Docket Nos. A-5553-14 and
A-3474-15 (Callagy Law, PC, attorneys;
Mr. McCann, on the briefs).

Andrew F. Lane, Jr., appellant pro se in
Docket No. A-1392-14.

PER CURIAM

These three appeals, which were calendared back-to-back and which we consolidate in this opinion, represent the parties' seventh, eighth and ninth appeals since they settled their divorce with the filing of a comprehensive marital settlement agreement in 2004.[1] The appeals addressed in this opinion relate to custody and parenting time issues regarding the couple's two eldest children, now both young women, ages twenty-two and twenty.[2]

In A-1392-14, defendant Andrew F. Lane, Jr. challenges an August 4, 2014 order denying his request to enforce his parenting time with the parties' younger daughter and a temporary transfer of custody of the two youngest children to him; an August 15, 2014 order for attorneys' fees to plaintiff Kathleen Lane; and an October 31, 2014 order denying reconsideration of those two orders.

---

[1] Lane v. Lane (Lane I), Nos. A-5645-09 and A-3401-10 (App. Div. Apr. 16), certif. denied, 212 N.J. 199 (2012); Lane v. Lane (Lane II), No. A-1582-11 (App. Div. Apr. 8, 2013); Lane v. Lane (Lane III), Nos. A-2952-12 and A-1623-13 (App. Div. Nov. 10, 2014), certif. denied, 221 N.J. 220 (2015); In re Adoption of an Adult by A.S.C. (Lane IV), No. A-5447-14 (App. Div. Mar. 30), certif. denied, 227 N.J. 246 (2016).

[2] The couple also has a seventeen-year-old son, who is not the focus of these appeals.

In A-5553-14, defendant challenges a June 30, 2015 order denying his request for a temporary custody change, his request that plaintiff's parenting time be supervised, and the enforcement of prior orders pertaining to custody and parenting time; access to the children's financial records and attorneys' fees.

In A-3474-15, defendant challenges aspects of a March 18, 2016 order cancelling a pending plenary hearing, directing plaintiff to pay $1500 in monetary sanctions, awarding him $8064 in attorneys' fees, and rejecting his contention that the trial court's position that it could not decide custody and parenting time issues involving the couple's two adult children prevented it from granting the relief he requested concerning custody and parenting time.

Having considered the parties' arguments, we affirm all three orders.

The parties divorced in 2004 when their three children were ages nine, seven and four. Although their 50/50 shared custody arrangement apparently worked well for the first two years, their relationship deteriorated after defendant succeeded in terminating his $80,000 per year alimony obligation to plaintiff when she began cohabiting with the man to whom she is now married, and plaintiff lost her motion to increase defendant's

$30,000 annual child support obligation. As we noted in Lane III,

> [s]ince then, whether attributable to plaintiff's and her husband's reactions to the 2007 litigation, as defendant argues, or attributable to defendant's parenting style and insistence upon strict enforcement of the parties' custody arrangement, as plaintiff argues, to varying degrees and at different times, one or more of the parties' daughters has resisted spending parenting time with defendant.
>
> [Lane III, supra, slip op. at 3.]

We have no need, and thus do not attempt, to chronicle the almost ten years of litigation over the parties' shared-physical custody arrangement that followed. We summarized a great deal of it in Lane III. See id. at 3-8, 14-38, 48-50. We concluded in that opinion that

> repeated post-judgment applications to enforce shared-physical custody make it clear that if they ever existed, the essential circumstances for shared parenting no longer exist. These parties have demonstrated their inability to set their conflicts aside in the best interests of their children. To put it mildly, the children clearly have not been spared their parents' resentments and rancor. Indeed, they have become the focal point of the rancor.
>
> Perhaps out of concern about being the one to lose, neither party has urged a best interests' hearing based on changed circumstances apart from the narrow question of the second child's new schedule.

A-1392-14T1

Plaintiff has apparently been well-served by simply allowing her children to dictate their schedule without regard to the court's orders. Defendant has opted to respond by taking a different approach, seeking to obtain sole custody not on a showing of the children's best interests but as a sanction for Plaintiff's well-established disregard of her obligation to support the children's relationship with their father.

[Id. at 49-50.]

Confronted with a record of an obvious breakdown in the parties' shared custody arrangement regarding their daughters, yet another enforcement motion pending unheard in the trial court and without the facts necessary to assess whether a change in custody would serve the children's best interests, we remanded for a plenary hearing. We noted that

[j]ust as a judge may order shared custody where the parties do not request it, a judge may and should order a hearing to determine what custodial arrangement would be in the children's best interests when the post-judgment motion practice of their parents makes it clear that the arrangement in place is not serving their children's best interests.

[Id. at 50.]

Notwithstanding our order, no plenary hearing has occurred. Both parties have continued to employ the same tactics in their ever-escalating warfare — plaintiff "apparently well-served by simply allowing her children to dictate their schedule without

regard to the court's orders," and defendant "opt[ing] to respond by . . . seeking to obtain sole custody not on a showing of the children's best interests but as a sanction for plaintiff's well-established disregard of her obligation to support the children's relationship with their father."

While Lane III was pending and since our opinion in that matter, the trial court denied the eldest child's application to intervene in her parents' divorce; defendant refused to provide consent to the parties' younger daughter to attend a community service trip abroad, causing a further rift in their relationship; plaintiff's husband adopted the parties' eldest daughter with the consent of plaintiff and without notice to defendant; the trial court denied defendant's request to permit him to intervene and vacate the adoption and to recuse the trial judge; another panel of this court rejected defendant's appeal of those proceedings, Lane IV, supra, slip op. at 14; the trial court scheduled a plenary hearing to address violations of defendant's parenting time, whether he should receive make up time, whether custody should be transferred temporarily to him and counsel fees among other issues; that hearing was never held and plaintiff subsequently moved to dismiss the one we ordered on remand with defendant's acquiescence, if not agreement; the

parties' younger daughter turned eighteen; and the court entered the orders in the present appeals. We address them as follows.

A-1392-14

The court's August 4, 2014 order arose out of the eldest child's motion to intervene in her parents' divorce, filed after she attained her majority. Following a consented adjournment, defendant opposed the motion and filed what he termed a "cross-motion" seeking relief against plaintiff for alleged violations of the parenting time schedule and a transfer of custody of the two younger children to him. Defendant's counsel refused requests for an adjournment to permit plaintiff time to respond to his cross-motion.

The court heard argument on the return date on the child's motion, which it denied, but adjourned the "cross-motion" to permit plaintiff an opportunity to respond. At argument on the child's motion, defendant's counsel complained the parties' younger daughter had not spent time with defendant in months, necessitating his cross-motion be heard immediately. The court advised that plaintiff would be permitted a week to respond and the motion would be heard fourteen days later.

Defendant thereafter filed an order to show cause seeking the same relief he sought in his cross-motion. Plaintiff filed

opposition detailing the younger daughter's reasons for not attending parenting time with defendant, including his failure to consent to the child's community service trip. She subsequently opposed his cross-motion and cross-moved for fees for having to respond to both the cross-motion and the order to show cause regarding the same matters.

The court denied defendant's request for entry of an order to show cause, reserved on his motion temporarily transferring custody of the two younger children to him pending a plenary hearing, denied without prejudice any relief requested by either party "that is or may be affected by the matters presently before the Appellate Division," and awarded plaintiff her fees on the motion.

In a statement of reasons accompanying the August 4, 2014 order, the court found the facts as to why the younger daughter was not attending parenting time with her father to be in dispute. The court noted defendant's "supposition, perhaps well-reasoned in light of past statements by the plaintiff" is that his younger daughter would not see him "'due to the plaintiff's refusal to abide by [the parties'] court-ordered 50/50 parenting time agreement, and [plaintiff and her husband's] relentless violations of multiple court orders and restraints.'" The court noted plaintiff countered with a

certification averring that despite her encouragement, the child "refuses to see [her father] and that her resistance started when [he] prevented [the child] from going on the community service trip."

The court found:

> Standing alone, the defendant's obstruction of [the child's] trip might not seem to be sufficient to cause a 16 year old girl to refuse to see her father. Against the backdrop in this case, it appears more than plausible and therein lies the factual dispute. Resolving this factual dispute will also resolve whether the plaintiff is acting to alienate the defendant, whether the defendant caused [the child] to resist seeing him, or whether they each are the cause of [the child's] refusal to see the defendant.

It accordingly ordered counsel to appear for a case management conference to identify witnesses, establish a discovery schedule and set a date for a plenary hearing.

The court also awarded plaintiff her counsel fees, finding defendant's filing of his "cross-motion" and subsequent order to show cause seeking the same relief

> establish that the defendant seeks to set his own schedule and had no regard for the court's direction, nor the dilemma created by his filing an improperly designated cross-motion, leaving the plaintiff no chance to timely oppose same, and then objecting to an adjournment to allow [her] to have the time to respond.

After reviewing plaintiff's counsel's affidavit of services, the court awarded plaintiff fees of $3150 in an August 15, 2014 order and denied reconsideration of both orders on October 31, 2014.

Defendant contends the court erred when it failed to take any enforcement action on hundreds of "irrefutable proofs" that plaintiff and her husband violated the parties' shared parenting plan. He argues his parent-child relationship with his younger daughter was at risk and that she was at risk of harm by the court's refusal to transfer her custody to him. He further claims the court should have rejected plaintiff's claim for fees and should have awarded him his fees on the motion. We reject those arguments as without merit.

Leaving aside our deferential view of a Family Part order on an enforcement motion, Milne v. Goldenberg, 428 N.J. Super. 184, 197-99 (App. Div. 2012), the law is clear that removing a child from a parent in violation of a custody order or agreement is a "remedy of last resort," which may only be imposed based on a finding it is in the child's best interests. Beck v. Beck, 86 N.J. 480, 499 (1981) ("Despite the obvious unfairness of allowing an uncooperative parent to flout a court decree, we are unwilling to sanction punishment of a recalcitrant parent if the welfare of the child will also suffer.")

10

Although there was apparently no dispute that the parties' younger daughter was refusing to spend time with her father when the parties filed their motions, cross-motions and orders to show cause, there was certainly no agreement as to why. The court was not hostile to defendant's position that plaintiff and her husband were at fault, characterizing his supposition as "perhaps well-reasoned in light of past statements made by the plaintiff." Expressing its willingness to resolve the parties' factual dispute over why the child was refusing to see her father, the court ordered a plenary hearing. Nothing more was appropriate at that juncture, certainly not a change of custody. See Entress v. Entress, 376 N.J. Super. 125, 132-33 (App. Div. 2005) (finding a change of custody to compel compliance with court orders without an evidentiary hearing and no imminent threat to the child "clearly and unequivocally reversible error").

The court's denial of defendant's request for counsel fees given his lack of success on the motion, and the $3150 fee award to plaintiff to compensate her for having to respond to defendant's voluminous and nearly identical filings was reasonable and obviously well-within the court's considerable discretion. See Yueh v. Yueh, 329 N.J. Super. 447, 466 (App. Div. 2000).

The court's June 30, 2015 order arose out of a motion defendant filed before a different judge to sanction plaintiff for her part in her husband's adult adoption of the parties' eldest child. Defendant sought an order: 1) referring plaintiff to the Bergen County Prosecutor's Office for colluding and consenting in the adoption; 2) holding plaintiff in contempt of court and in violation of litigant's rights for her part in the adoption; 3) holding plaintiff's husband in contempt of court and referring him to the Bergen County Prosecutor's Office for adopting the parties' eldest child; 4) compelling plaintiff to produce records of all money, property or other assets given, loaned or provided in trust to the parties' three children; 5) compelling plaintiff to produce financial and billing records for legal services provided to her husband and eldest child in connection with the adoption; 6) restraining plaintiff's husband from any contact with the parties' three children; 7) granting defendant temporary sole legal and residential custody of the parties' two youngest children; 8) or, alternatively supervising plaintiff's parenting time and restraining her from electronic contact of any kind with the two youngest children; 9) authorizing defendant to provide confidential therapy on an as

needed basis to all three children by a therapist selected by defendant; and 10) awarding defendant his counsel fees.

In a comprehensive written opinion addressing each one of defendant's claims, the court denied defendant relief.  The court noted it had already determined the adoption to be both voluntary and valid (a decision we affirmed in Lane IV), and found defendant had not offered any evidence that the adoption of the eldest child was "anything but [the child's] own desires."  Because the court deemed the adoption valid, it found no basis to hold plaintiff or her husband in contempt of orders prohibiting them from interfering with defendant's parenting time by consenting to and effecting the adoption.  The court likewise rejected defendant's request for billing records and money or other things of value to the eldest child as an inappropriate attempt to re-litigate the adoption.  It rejected production of documents referencing gifts to the youngest children as irrelevant and unnecessary.

Based on defendant's admission "that regular parenting time with [the two youngest children] has continued even after the adoption of [the eldest child]," although his parenting time with his then seventeen-year-old youngest daughter was "sometimes sporadic," the court found no basis to restrain plaintiff's husband from any contact with the youngest children

13

and continued the restraints prohibiting him from interfering with defendant's parenting time. Based on the same reasoning, the court denied defendant's request for an immediate transfer of custody of the two youngest children to him. The court found defendant had not offered any basis on which to supervise plaintiff's parenting time. The court refused to order the eldest child, now an adult, into therapy and found no basis for ordering therapy for the youngest children in light of "their regular to near-regular" parenting time with defendant. The court denied fees to both parties.

Defendant appeals, contending the court erred in failing to hold plaintiff and her husband in contempt for their failure to abide by the court's orders, to issue remedies and sanctions for their conduct, to order a temporary change in custody or supervising plaintiff's parenting time, in failing to restrain plaintiff's husband from contact with the children, in refusing to compel the production of the children's financial documents and in denying counsel fees. Our review of the record convinces us that none of these arguments is of sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

We held in Lane IV that the parties' eldest child "had a fundamental right under the adult adoption statute to seek to be adopted without [her father's] interference, and was free to

make her own decisions without regard to [his] wishes, views, or pre-adulthood parental rights." Lane IV, supra, slip op. at 12. Given that holding, we find no error in the trial court's refusal to sanction plaintiff or her husband for their part in that adoption or modify the custody arrangement of the two younger children.

A-3474-15

The court's March 18, 2016 order arose out of our November 10, 2014 decision in Lane III, in which we remanded defendant's motion for "a temporary transfer of custody, enforcement of prior orders, relief in the form of monetary sanctions and additional make-up parenting time, all as relief for alleged violations of the parenting orders in place," which the trial court declined to hear in its order of October 25, 2013 because of defendant's pending appeals on other issues. Lane III, supra, slip op. at 47-48. The court did not convene a conference on the issues remanded until September 18, 2015, ten months after we issued our decision. Although the trial court correctly attributed some of the delay to the litigation over the eldest child's adoption by plaintiff's husband, culminating in Lane IV, we cannot help but observe that a prompt plenary hearing on remand may have avoided the opening of that new front in the parties' ever escalating war over their children.

When the court finally convened that remand conference in September 2015 to address violations of defendant's parenting time from two years before, the parties' youngest daughter was two weeks shy of her eighteenth birthday. The remand did not implicate the parties' son, their youngest child. Plaintiff took the position that there was no point to a plenary hearing because the issues on remand were moot. She argued the court lacked jurisdiction to order make-up parenting time for defendant with a child no longer a minor and any economic sanctions would be punitive because they were no longer necessary to coerce her compliance with parenting time orders for the two eldest children. Defendant asserted the documented days of missed parenting time constituted per se violations of prior court orders by plaintiff that the court could resolve without testimony, and that he was not seeking a best interests hearing. The court set a discovery schedule and a date for the plenary hearing, but permitted plaintiff the opportunity to file a motion arguing the hearing was not necessary.

Plaintiff filed her motion to dismiss the hearing, arguing the issues were moot. Defendant cross-moved opposing the motion but arguing that all proceedings relating to the remand in Lane III should be stayed until all of defendant's pending appeals were decided, and that the children should not participate "in

A-1392-14T1

any way in the trial proceedings." Alternatively, defendant asked the court to find that it could not adjudicate the custody and parenting time issues remanded in Lane III based on 1) its position that the law deprives it of jurisdiction over the unemancipated children of litigants in the Family Part once those children turn eighteen; 2) that it has no parens patriae duty to prevent harm to such children; and 3) that all custody and parenting time rights are automatically terminated in New Jersey once an unemancipated teenager reaches eighteen. After the motion was ready for oral argument, the parties agreed the court could decide it on the papers.

In its order of March 18, 2016, the court granted plaintiff's motion to dismiss the plenary hearing based on the parties' agreement that no hearing was necessary. The court imposed a $1500 sanction against plaintiff for her violations of parenting time orders, noting the modest sum reflected its inability to determine bad faith or plaintiff's ability to comply with parenting time orders in light of the parties' insistence that the children not testify. It also awarded defendant the $8064 in counsel fees he sought on the motion remanded in Lane III.

Although acknowledging that none of the parties' children was emancipated, the court declined defendant's request for

make-up parenting time with the parties' youngest daughter, finding "[a]s an adult, she is not within the purview of this court's capacity to enter Orders involving her custody arrangements. Nor does this court believe that requiring an adult child to attend parenting time is in her best interests." The court denied all other relief.

Defendant appeals, arguing the court erred in dismissing the remand, in not making "findings on hundreds of remanded matters," in "not adjudicating issues where no dispute over material facts existed such that a hearing was unnecessary," and misapplied the law, including by finding it could not "enforce custody orders, act as parens patriae, or adjudicate remands" once an unemancipated child turns eighteen. We reject these arguments as lacking sufficient merit to warrant any extended discussion in a written opinion. R. 2:11-3(e)(1)(E).

We need not immerse ourselves in exploring the contours of the court's jurisdiction in matters of custody and parenting time involving the unemancipated young adult children of litigants in the Family Part or consider whether we agree with the court's reliance on R. 4:6-2 in deciding plaintiff's motion to dismiss the scheduled plenary hearing, because neither was central to the court's decision here.

The parties agreed they did not want the court to hold a plenary hearing. Notwithstanding defendant's insistence that any missed parenting time constituted a per se violation by plaintiff of prior court orders the court could resolve without testimony, that was never the case. Defendant's position on appeal — that the court failed to make findings and adjudicate issues — while having opposed a plenary hearing necessary to make those findings and adjudicate the issues, is simply untenable. See N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 340 (2010) (explaining that "'[t]he doctrine of invited error operates to bar a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error'") (quoting Brett v. Great Am. Recreation, 144 N.J. 479, 503 (1996)).

The disputed issues in this case essentially never changed. The parties agreed their daughters missed parenting time with their father, they disagreed over why that was so. As another judge explained to the parties over three years ago in August 2014, "[r]esolving this factual dispute will also resolve whether the plaintiff is acting to alienate the defendant, whether the defendant caused [the child] to resist seeing him,

or whether they each are the cause of [the child's] refusal to see the defendant."

Neither party has attempted to have the court hear testimony that could resolve that central factual dispute. As Judge Grall observed in Lane III:

> Plaintiff has apparently been well-served by simply allowing her children to dictate their schedule without regard to the court's orders. Defendant has opted to respond by taking a different approach, seeking to obtain sole custody not on a showing of the children's best interests but as a sanction for plaintiff's well-established disregard of her obligation to support the children's relationship with their father.
>
> [Lane III, supra, slip op. at 49-50.]

The parties have persisted so long in these entrenched patterns that their daughters, not teenagers when the hostilities between their parents erupted in 2007, have become young adults. While their daughters have grown up, the parties appear to continue, as their court-appointed custody evaluator concluded in 2012, to "fail[] to appreciate the impact that the litigation and their inability to accept any responsibility for their own contributions to the problem [have] on their children." Lane III, supra, slip op. at 25.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION